BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, et al., v. NASHVILLE, C. & ST. L. RY. CO.

No. 7525.

Circuit Court of Appeals, Sixth Circuit.

Dec. 15, 1937.

Mulholland & Mulholland, of Toledo, Ohio, and Manier & Crouch, of Nashville, Tenn., for appellant.

Wm. H. Swiggart and Walker & Hooker, all of Nashville, Tenn., for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

This appeal, like that in its companion case, Nashville, Chattanooga & St. Louis Railway v. Railway Employees' Department of the American Federation of Labor, et al., 6 Cir., 93 F.2d 340, decided December 7, 1937, involves the validity of a certificate of the National Mediation

Board designating representatives authorized to treat in collective bargaining with the railway for certain of its employees under provisions of the Railway Labor Act, U.S.C. title 45, c. 8, 45 U.S.C.A. § 151 et seq. Here, as there, the carrier declined to treat with the designated representative, and the union seeks the aid of the court to compel it to do so by mandatory injunction.

While additional relief by way of restraint against undue influence sought to be exercised by the carrier in an endeavor to control an election was also prayed and denied below, in our view no actual controversy is presented in respect to such additional relief, since appellant was successful at the election notwithstanding challenged acts of the carrier, asserts its validity and supports the Board's certificate based upon it.

Since 1921 the clerical and other office employees of the carrier have been associated for purposes of collective bargaining in a union styled "Nashville, Chattanooga & St. Louis Railway Clerks' Association," which has had a continuous bargaining agreement with the management of the carrier in respect to hours of service and working conditions, reciting that the clerks and other office employees of the carrier constitute a class separate and distinct from other employees. It is the contention of the carrier and of the intervening Association that the employees represented by the latter constitute a class or craft separate and distinct from freight handlers, laborers, and other warehouse and station employees not only through differences in characteristics of their employment and in qualifications for it, but because of voluntary choice and continued approval of the United States Railroad Labor Board under the Transportation Act of 1920, Decision 119, U.S.R.L.B., vol. 2, p. 87. It was there held that laborers employed in and around stations, storehouses, and warehouses, have no right to participate in election of representatives to negotiate rules for clerks, and vice versa.

Since 1921 the station employees and freight handlers not within the scope of the Association's agreement have had no representation for purposes of collective bargaining, nor a collective agreement with the carrier. In December, 1934, the appellant, which is a national union of railway employees of the scope indicated by its title, represented to the National Mediation Board that a controversy existed with respect to representation of the carrier's station employees for purposes of collective bargaining. The Board gave notice of an election, and took a secret ballot of all station employees from July 25, to August 5, 1935. The Association having informed the Board that the clerical employees wished to maintain their separate organization, and neither desired to represent the station laborers nor to be represented by them, it was arranged that the two groups vote separately. The name of the Association was at its request not placed upon the ballot voted by other employees, the Board reserving decision as to whether all station employees constituted one craft or class. The ballots were cast as if in separate elections, with the result that of 416 eligible clerical employees 233 voted for the Association and 170 for the Brotherhood. Of 294 station employees, other than clerical workers, 239 voted for the Brotherhood. It thus appeared that a majority of the clerical employees desired to retain their existing representative, while a majority of all station employees, including the members of the Association eligible to vote and voting, wished to designate the Brotherhood as representative.

On October 10, 1935, the Board issued its certificate. It recited that on the question whether clerks and other station employees should be voted as one class or craft it had instructed its mediator to take two separate ballots in order that the rights of the parties might be protected pending decision. The parties were then asked to file briefs in support of their respective contentions. After careful consideration of such briefs, and of facts developed by the investigation of its mediator, the Board was of the opinion that all the employees listed in the application for its services constitute one class or craft of employees. What facts were developed by the investigator, and whether the investigator or the Board had conducted a hearing, is not indicated, and, other than the general conclusion announced, there were no findings. Two reasons are given for reaching decision. One is that station employees include so many different kinds of work, such as baggage and parcel room employees, foremen, assistant foremen, gang foremen, janitors, cleaners, haulers, loaders, balers, truckers, freight handlers, etc., that if this class of employees were to be subdivided there is no reasonable ground for dividing

them into two classes. The other is the existence of a general practice on a large number of railroads to treat all such employees as constituting one class or craft. Upon this reasoning, and the mediator's report on the result of the election, the Board certified the appellant as the duly designated and authorized representative of all station employees, including clerks and office employees.

The question we have to decide is whether the Mediation Board acted within the scope of its authority in designating all station and warehouse employees as members of a single craft or class, and if so whether its decision was based upon evidence or was merely arbitrary, capricious, and unreasonable.

■ As indicated in the companion case, supra, it is apparent from a careful reading of the Railway Labor Act that the intent of the Congress was to preserve existing crafts and classes of employees as units for collective bargaining with employers. This constituted in part at least the rationale of our decision. The legislative design is further indicated by provisions of the statute not necessary in the earlier opinion to recite. Section 1—Fifth of the act contains the following proviso: "That no occupational classification made by order of the Interstate Commerce Commission shall be construed to define the crafts according to which railway employees may be organized by their voluntary action, nor shall the jurisdiction or powers of such employee organizations be regarded as in any way limited or defined by the provisions of this act [chapter] or by the orders of the Commission." 45 U. S.C.A. § 151(5).

Section 2—Fourth contains the following: "Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter." 45 U.S.C.A. § 152(4).

The terms "craft" or "class" are not defined. It is fair inference that the Congress intended that collective bargaining groups already constituted and functioning were to be recognized, and it is likewise fair inference that the terms were left sufficiently elastic to meet not only changing conditions but also varying existing conditions among the employees of carriers differing greatly in size, number of employees, intensiveness of their organization, and differences in its origin, scope, and development. The appellant concedes that the voluntary action of employees in group organization must be given consideration in the recognition of craft lines, but it urges that this factor is not the sole criterion for classification, for the end to be attained in determining the limits of any craft or class is the establishment (or recognition) of the grouping which will be most likely to succeed as collective bargaining agencies, and that in this respect the experience of carriers generally is of importance, and that other factors equally relevant might be suggested. It also contends that similarity of employment is unreliable as a test of craft boundaries where there is much overlapping of work, and that the Mediation Board, balancing one factor against another, may adopt as the basis of its decision any of the relevant factors to be considered and reject the remainder without being guilty of arbitrary or unreasonable action.

It may be deduced from this that there is no contention that the Board may of its own motion establish crafts or classes by arbitrary rulings as to grouping, or that the Board is authorized by the statute to ignore historical development, the wishes of the employees, or other factors material to a determination of the existence and scope of existing craft or class groups. It is urged, however, that where there has been a general finding in respect to craft or class limits, such finding is conclusive upon the court when any one of the relevant factors has been given weight in reaching decision, and this even though there is no indication by findings or otherwise that other factors have been at all considered.

■ The question as to the existence of a distinct class or craft is, of course, one of fact, and courts are reluctant, even where not precluded by statute, to disturb administrative decision thereon, but a conclusion that a craft does or does not exist is but the finding of an ultimate fact, and whether or not it is based upon substantial evidence can be determined only if the evidentiary facts giving rise to it may be examined, and the conclusion must then be sustained only if such evidentiary facts support it. The question as to the existence of substantial supporting evidence becomes one of law.

■ It was said of the present statute that under it "The National Mediation

Board makes no order. The command which the decree of the court enforces is that of the statute, not of the Board. Its certificate that the Federation [Brotherhood] is the authorized representative of the employees is the ultimate finding of fact prerequisite to enforcement by the courts of the command of the statute." Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 562, 57 S.Ct. 592, 606, 81 L. Ed. 789. The certification there made failed to indicate the basic facts on which it rested, the question being the validity of an election, which could not be determined without findings as to the number of eligible voters, the number participating, and the choice of the majority of those who did participate. The court considered it unnecessary to determine whether the certification if made as to such basic facts would be conclusive, but said, "But we think it plain that if the Board omits to certify any of them, the omitted fact is open to inquiry by the court asked to enforce the command of the statute. See Dismuke v. United States, 297 U.S. 167, 171–173, 56 S.Ct. 400, 403, 404, 80 L.Ed. 561. Such inquiry was made by the trial court which found the number of eligible voters and thus established the correctness of the Board's ultimate conclusion." There were here likewise no findings as to the existence or absence of basic facts pertinent to the inquiry, including among others similarity of work to be performed, historical grouping of employees, relative requirements of skill, training, experience, and aptitude, or the existence of a community of interest that promised success within the spirit of the statute. The court was completely without advice as to what facts were developed by the mediator and in the dark as to their relevancy. In this situation it seems necessary to conclude in the application of the reasoning of the Virginian Case that the omitted facts, or such of them as are fairly required for just determination, could be inquired into by the trial court, and while the certificate was prima facie sufficient, yet where the facts disclosed by the evidence failed to support it, it should not by a court of equity be enforced. Cf. McNulty v. National Mediation Board et al., D.C.N.Y., 18 F.Supp. 494; Brotherhood of Railroad Trainmen v. Mediation Board, 66 App.D.C. 375, 88 F.2d 757.

■ It is, moreover, doubtful that the facts indicated as having been considered have much probative force. The fact that on many railroads all station employees are organized into one craft or class is a circumstance to be considered, but, standing alone and unexplained, it does not substantially support a conclusion that the station employees of the present carrier have been, are, or should be, so grouped, for it may well be that the employees of some carriers may be content to be thus grouped, have known no other classification, and have developed a community of interest as a craft or class within the purview of the statute. Nor is there probative force for a conclusion destroying a long-established class organization sanctioned and approved by administrative authority in the fact that the group includes or excludes borderline employees who may with equal reason fall within or without the established classification. No issue is here presented as to classification of employees in the twilight zone, who perform manual labor part of the time and clerical work at other times. If there were it would present no insoluble problem, for, in the agreement between the director general of railroads and the Brotherhood of Railway and Steamship Clerks effective January 1, 1920, it was provided that employees who regularly devote not less than four hours a day to writing and calculating incident to keeping records and accounts, etc., should be designated as clerks, and others as laborers, an arbitrary classification, no doubt, but not an unreasonable one. Nor is the Board's conclusion supported in any substantial degree by the suggestion that if there is to be a subdivision of station and warehouse employees there is no reasonable ground for dividing them into two classes. There is no such controversy, and if there were the relevant factors leading to decision might well be other than those here indicated.

■ The court below upon consideration of all of the evidence found certain basic facts: That the common working characteristics of the clerical employees are that they are required to perform clerical work, or work closely akin thereto, for which work they are required to be fitted and qualified by education, training, and qualities of personal character and integrity; that the common working characteristics of remaining station employees and freight handlers are that they are required to perform manual labor in and around station platforms and warehouses, for which they are required to possess qualities of physical

strength and endurance and for the performance of which work education and mental training are not required or necessary; that the intervener Association was a voluntary organization of clerical workers and had been such for many years, maintaining an organization for purposes of collective bargaining separate and apart from other station employees and freight handlers; that in the secret ballot conducted by the Mediation Board the employees represented by the Association, voting as a distinct craft, had expressed their desire to be represented by it. It concluded that in such situation the National Mediation Board was without power to combine the vote of the clerical workers with that of the other station employees to determine who should represent the clerical employees, and entered a decree dismissing the bill.

Our analysis of the evidence indicates that the facts found are fully supported by the proofs, and our consideration of the terms of the statute and its inherent design compels the conclusion that it neither authorizes nor encourages nor commands the type of gerrymandering that must inevitably follow the enforcement of a certification which ignores the basic facts of historical development, similarity of employment, community of interest, and well-defined group choice. The court below did not abuse its discretion in denying relief, and its decree is affirmed, without prejudice, however, to the right of either party to the controversy making further application to the Mediation Board, and without prejudice to future application to the court to restrain unfair influence upon freedom of choice, if and when there is again resort to election.

It is so ordered.