## ORDER OF RY. CONDUCTORS OF AMERICA et al. v. NATIONAL MEDIATION BOARD et al.

### No. 7530.

United States Court of Appeals for the District of Columbia.

Argued April 9, 1940.
Decided June 24, 1940.

---

George P. Hoover, of Washington, D. C., for appellants.

Robert L. Stern, of the Department of Justice, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and VINSON, Associate Justices.

EDGERTON, Associate Justice.

This is a suit by the Order of Railway Conductors (O. R. C.), and three yard conductors and three road conductors on the Pittsburgh and Lake Erie Railroad, to set aside a certification of the National Mediation Board that the Brotherhood of Railroad Trainmen (B. R. T.) is entitled to represent yardmen (including yard foremen or yard conductors, yard helpers or yard brakemen, and switchtenders) on that road. "Yard foremen" and "yard conductors" are synonymous terms; so also are "yard brakemen" and "yard helpers." This appeal is from a judgment which sustained the Board and

dismissed the complaint. The question argued is whether the Board's finding that yard foremen or yard conductors are part of the craft or class of yardmen is supported by substantial evidence, or is arbitrary and capricious. The view we take of this question makes it unnecessary to consider any other.

The Railway Labor Act, § 2(4), as amended, 45 U.S.C.A. § 152(4), provides that "employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter."[1] The Act authorizes the Board to conduct elections for the purpose of settling disputes, and to certify who is "the representative of the craft or class for the purposes of this chapter. * * * The Board shall designate who may participate in the election. * * *" The carrier is required to "treat with" the representative certified by the Board.[2]

Practically all the main track of the Pittsburgh and Lake Erie is within its yards, and most of its crews are yard crews. For many years, up to 1935, the road made and maintained agreements with O. R. C. as representing road conductors, and with B. R. T. as representing yardmen, including yard foremen or yard conductors, yard brakemen or helpers, and switchmen. In 1935 the Board, without a hearing, held an election in which it treated road conductors, yard conductors, road brakemen or flagmen, yard brakemen, train baggagemen, ticket collectors, and switchtenders as seven distinct crafts or classes. Although B. R. T. received a majority of the votes cast by yard conductors, the Board certified no representative of that class because none was chosen by a majority of its members eligible to vote. In a second election in 1935, likewise held without a hearing, for yard conductors only, O. R. C. was chosen by the majority of those eligible. The Board then certified O. R. C. as representative of the class, and in November, 1936, the carrier made an agreement with O. R. C. which covered yard conductors as well as road conductors. Meantime, in October, 1936, B.

[1] U.S.C., Tit. 45, § 152, Fourth, 48 Stat. 1187, 45 U.S.C.A. § 152(4).

[2] § 152, Ninth, 48 Stat. 1188, 45 U.S. C.A. § 152(9).

R. T. applied to the Board to settle a dispute, contending that yard conductors, yard helpers, and switchtenders constituted a single craft or class and that B. R. T. had been selected by the majority of that class. O. R. C. contended that yard conductors were a separate craft. In 1937 the Board held public hearings on that question, determined that its previous rulings without hearing were erroneous, and found that yard conductors, yard brakemen or helpers, and switchtenders constituted the craft or class of yardmen. In 1938 it held an election for yardmen. A majority voted for B. R. T., and in 1939 the Board certified B. R. T. as representative of yardmen. The complaint in this suit, originally filed in 1938 to enjoin the certification, was afterwards amended to ask that it be set aside, on the ground that it was arbitrary, capricious, and unsupported by substantial evidence. The District Court found to the contrary, and dismissed the complaint.

We think the certification is not arbitrary and is supported by abundant evidence. The Railway Labor Act is intended not merely to protect independence and the right to organize, but also to settle disputes and avoid interruptions in operation.[3] Accordingly it aims not to compel the creation of new craft or class lines, but to recognize the lines which are drawn in the industry.[4] It intends that groups which have chosen to bargain as units may do so. This is emphasized by its use of the broad term "craft or class" instead of the narrow term "craft." For many years before 1935 all yardmen, including foremen, helpers, and switchmen, on the Pittsburgh and Lake Erie acted as a unit, and were represented by a single labor organization in making joint working agreements with the company. For example, an agreement covering "Rules and Rates of Pay for Conductors, Trainmen and Yardmen employed on The Pittsburgh & Lake Erie Railroad, taking effect August 17, 1920," was signed for the "conductors" (i. e., road conductors) by officers of O. R. C., and for the "yardmen," including foremen, helpers, and switchtenders, by officers of B. R. T.[5] The Board's hasty ruling of 1935 caused deviation from the practice of treating yardmen as a unit for bargaining purposes; but this is immaterial, since the Act does not forbid the Board to correct its own errors. With a few exceptions, yardmen are covered by a single collective bargaining agreement on each of the 147 class I railroads in the country. From 1919 to 1925, and again from 1932 to 1934, national agreements were in effect between O. R. C. and B. R. T. by which the right to make and interpret contracts, etc., for road conductors was vested in O. R. C., and for yard conductors, yard helpers, and switchmen in B. R. T. In 1932 the two organizations settled, in accordance with this agreement, a dispute as to jurisdiction over yard conductors in "open yards" of the Pittsburgh and Lake Erie. The Board and its predecessor have usually conformed to the common practice in the industry by recognizing yard conductors and helpers as members of the same craft or class for collective bargaining purposes. "The Board is impressed that the tendency to divide and further subdivide established and recognized crafts and classes of employees has already gone too far, and threatens to defeat the main purposes of the Railway Labor Act. * * *"

While the Board's 1935 certification was in effect, B. R. T. advised the carrier that if its agreement with O. R. C. included only regularly assigned road conductors and regularly assigned yard foremen, B. R. T. would "of course * * * not protest." B. R. T. thereby recognized that the 1935 certification was operative, but not that it was correct.

Facts regarding work, promotions, and pay further support the classification of yard foremen with yard helpers and switchmen. Together they connect and disconnect cars, make up and break up trains, and turn switches. They work in crews which consist of one foreman and, usually, two helpers. There was conflicting testimony concerning the extent to which foremen share in the manual work, but the trial court found on sufficient evidence, which was also before the Board, that "although the yard foreman

[3] 48 Stat. 1186, § 2; U.S.C., Tit. 45, § 151a, 45 U.S.C.A. § 151a.

[4] Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App.D.C. 375, 88 F.2d 757; Brotherhood of Railway and Steamship Clerks, etc., v. Nashville, C. & St. L. Ry. Co., 6 Cir., 94 F.2d 97, 99.

[5] The B. R. T. officers represented the trainmen also.

is in charge of the yard crew and receives a higher rate of pay, foreman and helpers do the same kind of work, the foreman working with the helper in the switching operations. The work of yard foremen and yard helpers is very similar." New employees begin as brakemen or trainmen, interchangeably on the road and in the yard. After a year they may take examinations for promotion to yard foreman and road flagman. Road flagmen are members of the road brakeman's craft, not the road conductor's. One year after he qualifies as yard foreman and road flagman, a man becomes eligible for promotion to road conductor. Thus the position of yard foreman or conductor is coordinate with that of road flagman and below that of road conductor. In 1937, some 80 percent of the brakemen on the P. & L. E. were qualified as yard foremen. Men qualified as foremen often voluntarily take jobs as brakemen. Yard foremen receive $7.14 and yard brakemen $6.62 per day. The difference, 52 cents, is 6 cents less than the difference between the pay of way freight brakemen and passenger brakemen, who are members of one craft, and far less than that between the pay of road conductors and road brakemen, who are members of different crafts. Road conductors receive $2.15 more than road brakemen in passenger service, $1.42 more in through freight service, and $1.55 more in way freight service.

Witnesses for O. R. C. testified to a conflict of interest, and witnesses for B. R. T. to a community of interest, between foremen and brakemen. Since they do similar work, are largely qualified to do the same work, and frequently exchange work, there is necessarily much community. Necessarily also there is some conflict, but there is usually some conflict between the senior and junior members of one craft. The fact that the P. & L. E. maintains a combined roster of road and yard men, and that the same men have seniority rights on the road and in the yard, no more proves that the craft lines of the road should prevail in the yard than it proves that the craft lines of the yard should prevail on the road. Road conductors and brakemen do very different work, while yard foremen and helpers do relatively similar work.

Appellants rely largely on the fact that the occupations of yard foreman or conductor, yard helper or brakeman, and switchtender have different names, which are carried into schedules, agreements and seniority rosters, and which are sometimes referred to as "classes." But this proves nothing, since passenger conductors and assistant conductors, all of whom unquestionably belong to the craft of road conductors, are named separately and referred to as classes, and six kinds of baggagemen, all of whom belong to a single craft, are likewise named separately and referred to as classes. In the Interstate Commerce Commission classification for reporting purposes yard conductor or foreman, yard brakeman or helper, and switch tender are all described as "distinctive classes of positions". But the Commission's classification likewise lists as "distinctive classes" the positions of road passenger conductor, road through freight conductor, road local and way freight conductor, assistant road passenger conductor, road passenger flagman or brakeman, various types of road passenger baggageman, road through freight brakeman or flagman, and road local and way freight brakeman or flagman, though for collective bargaining purposes all these are within either the craft of road conductor or that of road brakeman. The Railway Labor Act provides that "no occupational classification made by order of the Interstate Commerce Commission shall be construed to define the crafts according to which railway employees may be organized by their voluntary action."[6]

Affirmed.

---

[6] 45 U.S.C. § 151, Fifth, 45 U.S.C.A. § 151(5).