BROTHERHOOD OF RAILROAD TRAIN-
MEN et al. v. NATIONAL MEDIATION
BOARD et al.

No. 8311.

United States Court of Appeals for the
District of Columbia.

Argued Nov. 13, 1942.

Decided Feb. 15, 1943.

Mr. James Metzenbaum, of Cleveland, Ohio, with whom Mr. Herbert G. Pillen, of Washington, D. C., was on the brief, for appellants.

Mr. Robert L. Stern, Special Assistant to the Attorney General, for appellee National Mediation Board.

Mr. George P. Hoover, of Washington, D. C., for appellees other than National Mediation Board.

Before GRONER, Chief Justice, and VINSON and RUTLEDGE, Associate Justices.

GRONER, C. J.

This is an appeal from a decree of the United States District Court dismissing appellants' complaint. The controversy, of long standing, is primarily between the Brotherhood of Railroad Trainmen, which we shall call "the Trainmen", and the Order of Railway Conductors of America, which we shall call "the Conductors." The Chicago & North Western Railway Company, as a sort of stakeholder, is concerned in a lesser degree, although it is not a party.

The case concerns Section 2, Fourth and Ninth, of the Railway Labor Act, as amended,[1] the pertinent parts of which are as follows:

"Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act [Chapter]. * * *

"Ninth. If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this Act [chapter], it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. * * * *"

The history of the dispute is contained in elaborate findings of the Board and the District Court. Abbreviated for the purposes at hand it is as follows:

For some time prior to the spring of 1920 the Railway maintained twelve switching yards in and around Chicago, known collectively as the Chicago Switching District, all of the yard men of which, including

[1] 45 U.S.C.A. § 152, 4th, 9th.

the yard foremen, were represented by the Trainmen. On or about April 3, 1920, an outlaw strike of yard employees occurred, completely tying up yard service in the Chicago District. In spite of the efforts of the Trainmen, the strikers refused to return to work and other yard men under its jurisdiction employed in other yards of the Railway outside of Chicago, though requested by it to do so, refused to take their places. After two weeks the Trainmen, recognizing its inability to perform its contract with the Railway and to insure protection to the yard service, appealed to the Conductors to come to its aid by taking over the contract covering the work of the yard foremen in the Chicago District.

Negotiations between the Trainmen, the Conductors and the Railway followed, as a result of which the Chicago Switching District was incorporated into the Galena and Wisconsin Divisions of the Railway. The existing agreement between the Trainmen and the Railway governing rates of pay and working conditions was voluntarily surrendered by the Trainmen and turned over to the road men; the road conductors, represented by the Conductors, to do the work of yard foremen and the road brakemen, represented by the Trainmen, to do the work of yard helpers. The contract was to continue until revised or abrogated by agreement.

Shortly thereafter, an adjudication by the Trainmen and the Conductors as to the seniority rights of road conductors doing yard foremen's work, resulted in a joint ruling that, under the agreement, the positions in the yard were to be considered as reclassified and the jobs formerly known as "foremen's positions" were to be filled by conductors—specifically, "that all positions in the Chicago Switching District known as 'Foremen's positions' prior to April 21, 1920, are now conductors' positions"—; and the jobs formerly known as "helper positions" were to be filled by road brakemen; and that the members of each class were entitled to positions on the seniority rosters as such. The result of all of this was to transfer the yard foremen's work in the Chicago District to the Conductors of the Railway working on the Galena and Wisconsin Divisions, and the yard helpers' work to the brakemen of the Railway so employed, with the option on the part of the conductors to interchange between road work and yard work in accordance with their certain seniority rights.

This arrangement continued for about eight years until 1928 when, at the Cleveland Convention of the Trainmen, a resolution was adopted to the effect that since the 1920 agreement had served its purpose, the Trainmen desired that it be cancelled and that the employment status in the Chicago District be restored as it had existed prior to the unlawful strike. Representations to this effect were made to the Railway Company and to the Conductors. The latter opposed any change, and a conference between the Railway, the Trainmen, and the Conductors was had. No change was made. Two years later, notice was given to the Railway of the purpose of the Trainmen to call a strike unless its views were adopted and the Yard closed to the road conductors. In answer to this the Railway, in a full and fair review of the respective rights of the parties as established by the contracts and its interpretation by the two unions, gave notice to the Conductors and to the Trainmen that it was not the purpose of the Company to "close" the terminals to conductors, but instead to respect and protect the rights of all parties to the contract. Summarizing his investigation of the question, the President of the Railway said: "The preponderance of evidence proves conclusively that the O. R. C. has been recognized as having the right to represent and legislate for conductors performing yard service in the Chicago Switching District in the handling of schedule negotiations, grievance cases, as well as all matters concerning conductors since the agreement of April 21, 1920, and I must hold that such right has not been taken away from that organization through the operation of any agreements or contracts."

From 1930 to 1935 the Railway continued to recognize the Conductors as the representative of the conductors working as yard foremen and to recognize the Trainmen as the representative of the brakemen working as yard men. Separate contracts were made with the Conductors and Trainmen accordingly. The Trainmen recognized the right of the Conductors to represent the conductor employees in yard as well as road work and the Conductors recognized the Trainmen's right to represent the brakemen engaged in either. In 1935, the Trainmen requested the National Mediation Board to make an investigation or to hold an election and to make a certification to the effect that the Trainmen was

entitled to represent *all* the yard men employed by the Railway. The Board accepted the "invocation" and appointed a mediator to investigate and report. The latter found that there was not a "representation" dispute within the meaning of the Railway Labor Act. Thereupon the Board ordered a public hearing, with opportunity to all concerned to present evidence, and after a long and exhaustive proceeding determined that there was "here no dispute such as is described in Section 2, Ninth, of the Railway Labor Act"; that such controversy as existed arose out of the claim of the Trainmen "that the men now classified as road conductors who work as yard foremen in the Chicago Switching District are also yardmen and therefore must be included within the craft or class of yardmen"; that "by agreements whose validity is not questioned, road conductors are authorized to do yard work in the Chicago Switching District. The Brotherhood of Railroad Trainmen desires to change this agreement, but the Order of Railway Conductors objects, and the carrier will not agree to make the change because the conductors refuse to relinquish their contractual right to work as yard foremen"; that the real object of the Trainmen is "to add to the craft or class of which it is the acknowledged representative some 100 or so conductors who do yard foremen's work in the Chicago District."

In conclusion the Board said: "The authority of the Board under provisions of Section 2, Ninth, of the Railway Labor Act to determine established crafts or classes of employees is limited to representation disputes requiring designation of employees who are eligible to participate in electing the representatives of the craft or class. Since the representative of the yardmen and switchtenders in the present case is known, acknowledged and not disputed [and since the representative of the conductors is equally known, acknowledged and not disputed], no election is warranted, and there is no need for designating the employees of the craft or class who may participate."

In short, what the Board held was that by agreements, the validity of which was universally recognized and admitted, road conductors were authorized to do yard work in the Chicago Switching District and that the invocation of the Trainmen was nothing more nor less than an effort to force them to relinquish this work in order that the Trainmen might supplant

them with men of their own order. The Board, recognizing that this result could be accomplished only by declaring the existing working agreement invalid and ignoring an established custom of twenty years' standing, held it was not required under the statute to order an election.

 We think there can be no manner of doubt that the decision of the Board is correct. As has been seen, it is not disputed that the Trainmen represent all the yardmen on the Railway and that the Conductors represent all the conductors on the Railway. This was the case before the strike and has been the case ever since. The effect of the agreement made by the Railway, the Conductors and the Trainmen following the strike was to make the yard work of the employees in the Chicago District the road work of the employees on the Galena and Wisconsin Divisions. Employees who were conductors on one or the other of the Divisions became, by virtue of certain seniority rights, entitled to work as foremen in the yards. The operation of the yards in accordance with this scheme has been carried on for more than twenty years. Customs have been established and rights have accrued. In these circumstances, and especially in view of the fact that the Trainmen freely participated in the formation of the present craft or class lines, it is of no consequence that at one time the rights and duties of the two crafts or classes were different. The Board, we think, properly held, indeed the fact is admitted, that there is here no dispute as to who is the representative of any craft or class. It is perfectly clear that such dispute as exists is whether particular work is to be done by employees within one craft or class or another. And the Board's authority to determine who is the representative of a craft or class does not include authority to define the type of work that each craft or class must do. This, in substance, is what we held in Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App.D.C. 375, 88 F.2d 757.

In 1920 the classification of the work which these men undertook to perform was changed by agreement from yard foremen service to yard conductor service, and the Chicago Switching District was, as we have seen, included in the two divisions of the Railway. Hence, we think, it is a matter of no consequence that the rights these conductors had prior to the agreement were confined to the operation of trains on the

line of railway. Here the conductors, for the time being working in the yard, do not claim that they constitute a separate bargaining unit. They recognize, as does everyone concerned, that they are members of the Conductors' order and that it is their representative for bargaining purposes. What they insist upon is that before the passage of the Railway Labor Act their duties as conductors were extended by agreement with the Railway and Trainmen to certain yard work which they have ever since performed as part and parcel of their conductor service, and that another craft or class ought not to be permitted to replace them because it had elsewhere preempted the field. This seems to us both reasonable and logical. We are therefore in agreement with the Board that the present controversy does not involve a dispute within the provisions of Sec. 2 of the Railway Labor Act. See Brotherhood v. Board, supra; Brotherhood v. Nashville, C. & St. L. R. Co., 6 Cir., 94 F.2d 97.

Affirmed.

RUTLEDGE, Associate Justice (concurring in result).

I concur in the result, and in the opinion of the court with one qualification which I think is important. That relates to the statement: "And the Board's authority to determine who is the representative of a craft or class does not include authority to define the type of work that each craft or class must do." To support this the opinion cites Brotherhood of Railroad Trainmen v. National Mediation Board, 1936, 66 App.D.C. 375, 88 F.2d 757, which seems to me to sustain the opposite view.[1]

The statement is not necessary for the decision of this case. But I am unable to accept it as harmless dictum. It is true that, apart from a dispute as to representation of a craft or class, the Mediation Board has no power to determine craft or class boundaries. But when such a dispute involves not only the question who shall be representative, but also who shall be represented, the Board is empowered to decide the latter by the provision of Section 2, Ninth, of the Railway Labor Act authorizing it to "designate who may participate in the election." This necessarily involves fixing the class or craft lines for purposes of holding the election or otherwise selecting the craft or class representative, and when doing this requires settlement of a jurisdictional dispute, whether over work or over men, the Board must make the decision. This is conceded in the brief filed here on behalf of the Board. The reasons supporting this view are set forth fully in the dissenting opinion in Switchmen's Union v. National Mediation Board, —— U. S. App.D.C., ——, 135 F.2d 785, decided this day.

The Board's power to fix craft or class lines, however, by the explicit terms of the Act (Section 2, Ninth) is one which can be exercised only as an incident to its authority to determine who is the representative of a craft or class. It is therefore only when the dispute requires an election, or use of other appropriate means, to settle this question that the Board can fix craft or class lines by exercising its power to "designate who may participate in the election."

No such dispute is presented in this case. Admittedly the B. R. T. represents 95 per cent of the Northwestern's 1200 yardmen, including 200 in the Chicago Switching District. Likewise the O. R. C. undisputed-

---

[1] This court reversed a judgment sustaining the Mediation Board's decision which excluded part-time conductors from participating in an election to determine who should represent the class or craft of conductors. The Board's order was held arbitrary, for want of an adequate hearing. The principal reason, apparently, was the Board's failure to inform the appellants of the facts on which it based its designation and its ruling as to who might participate. But the opinion also reviewed the evidence as to the existing working agreements and past practices and organization of the railway's employees. In these, it said, "is to be found at least some evidence of who are members of the craft or class covered by that agreement," (Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App.D.C. at 378, 88 F.2d at 760) and full recognition was extended to the fact that "the intent of Congress was to clothe the Board with large discretionary powers in the conduct of elections * * *" (Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App.D.C. at 379, 88 F.2d at 761). The decision is authority for the proposition that the Board cannot act arbitrarily in defining the craft or class for the purposes of election and representation. It does not hold that the Board cannot make that decision when necessary and without doing so arbitrarily.

ly represents the several hundred road conductors. There is no dispute as to the representation of either class. The B. R. T. makes no claim to represent the craft or class of conductors and the O. R. C. makes no claim to represent the craft or class of yardmen.

There is a dispute between the two organizations whether the work done by about 100 conductors as yard foremen in the Chicago district falls within the craft or class of yardmen or within that of conductors. This is a jurisdictional dispute, whether regarded as one over work or as one over men. It is the kind of dispute the Board would be required to decide if it were presented as an issue in a controversy concerning who should represent a craft or class. But no such question is raised. The only question is whether these 100 men should belong to one class or the other, or the work they do should be allocated to one or the other. No one contends that the 100 conductors constitute a separate unit in themselves. Hence there is no dispute as to who is the representative of such a craft or class, or any other.

The Board's brief puts the matter well, as follows:

"That the present case does not constitute a representation dispute within the meaning of Section 2, Ninth, will appear from a hypothetical situation which differs from it only slightly. Let us assume that 1,200 yardmen are all members of the B. R. T., and that that organization is admitted to be the representative of the craft of yardmen, and that 400 road conductors all belong to the O. R. C., which concededly is the representative of that craft. The two unions are in violent dispute, however, as to whether three men fall in one class or craft or the other. Such a dispute would obviously not be one as to the representation of a class or craft, inasmuch as the representation of no class or craft was disputed. The principle is the same no matter how large the group concerned, if both sides concede that it is not large enough to affect the choice of representatives.

"It is important to distinguish this situation from that in which the minority group is claimed to form a separate bargaining unit of its own. In that case, when one party claims to represent such a unit as a class or craft and the other insists that the class or craft is composed of a larger group, there is a dispute as to who represents a class or craft. This would be true no matter what the relative sizes of the two groups. In resolving such a dispute the Board must first determine what the class or craft is, in order that it may designate who may participate in the election. The fact that there may be no doubt as to the outcome of an election after the proper voting unit has been determined does not mean that the original controversy was not a dispute as to class or craft representation."

The situation last discussed represents the type involved in Switchmen's Union v. National Mediation Board, supra, and in Order of Ry. Conductors v. National Mediation Board, 1940, 72 App.D.C. 299, 113 F.2d 531, and distinguishes those cases.

In summary, the Board has no power under Section 2, Ninth, to decide a jurisdictional dispute merely as such. It can do so only as an incident to settling a dispute as to who shall represent a craft or class. No such dispute is presented. No one questions the right of any representative to represent the class or craft it now represents. No one contends there is a new or separate class for which a representative should be selected. The only dispute is whether certain men, not enough to affect the representation of either craft or class, shall be represented with the one or with the other; or, possibly, whether work now being done by members of one craft shall be taken from them and given to members of another, again without affecting the representation of either. Consequently the Board rightly held that it had no power to determine the dispute, and the judgment affirming this should be sustained.