**BUSBY et al. v. ELECTRIC UTILITIES EMPLOYEES UNION.**

**No. 8548.**

United States Court of Appeals District of Columbia.

Argued March 16, 1944.

Decided Jan. 22, 1945.

Mr. Warren E. Magee, of Washington, D. C., for appellants.

Mr. John J. Carmody, of Washington, D. C., for appellee.

Before GRONER, C. J., and EDGERTON and ARNOLD, JJ.

GRONER, C. J.

Appellants are residents of the District of Columbia and are attorneys at law and members of the Bar. Appellee is an unincorporated labor union, having a president, secretary, treasurer and other officers located in the District of Columbia, and has a written and duly adopted constitution and by-laws, and is the constituted representative for bargaining purposes concerning wages, grievances, etc., etc., of the nonsupervisory employees of Potomac Electric Power Company, an electric utility company operating in the District of Columbia and the adjoining metropolitan area, including parts of Virginia and Maryland.

The complaint alleges that appellee employed appellants to represent it in perfecting its organization and in securing its recognition by the Power Company as a labor union and bargaining agency (under the provisions of the Wagner Act, 29 U.S. C.A. § 151 et seq.) of the employees of the Power Company; that appellants represented the union in the matters heretofore mentioned and on its behalf negotiated with the Power Company two separate contracts, by the terms of which the employees of the Company, members of the union, received *annual* pay increases and benefits in the sum of approximately $1,500,000, which they have ever since enjoyed, as a result of which it became and was the duty of appellee to pay appellants a reasonable attorney's fee for their services, etc.

Appellee answered on the merits and later, after the complaint was amended, moved to dismiss the amended complaint and to quash the original service of process, because both counts of the complaint show that the defendant (appellee) is an unincorporated, unaffiliated labor union, and accordingly is not such a legal entity as is suable in the District Court.

The District Court granted the motion to quash and dismissed the complaint. On appeal to this court the case was argued solely on the question whether appellee, an unincorporated labor union, is suable in an action for debt in the District Court, where service of process is duly made upon its President.

It is hardly worth while to say that if the question were timed as of a period thirty or forty years ago, the answer would be that under the general rule of the common law a voluntary association, which is nei-

ther incorporated nor has otherwise acquired the status of a corporation, or quasi corporation, is not suable in its common name, and this for the reason that it has no legal entity distinguishable from that of its members. In such a case suit might only be brought in the names of all of the individual members. But since the turn of the century the tremendous growth of labor unions, their internal set-up and organization, the extension of their rights and privileges, and the recognition and protection of these in state and federal statutes has resulted in a nearly universal change of viewpoint on the subject of their suability. And this changed viewpoint is by no means confined to courts or legislatures, but is shared, among others, by the leaders of labor, as is strikingly evidenced in the testimony of Mr. Padway,[1] in the hearings before the Judiciary Committee of the House of Representatives on the Rules of Civil Procedure, March 1, 2, 3 and 4, 1938.[2] On that occasion, speaking in relation to Rule 17(b), 28 U.S.C.A. following section 723c,[3] authorizing suits by and against unincorporated associations in the common name, for the enforcement of substantive rights under laws of the United States, he said:

"For many years there was holy horror on the part of labor organizations to the inclusion of a provision of this kind. They did not wish to be in the position of being sued, or to sue in their common name. They objected to that. That arose out of experience, just as a child burns its fingers and learns its lesson.

"We had the famous Danbury Hatters' case [Lawlor v. Loewe, 2 Cir., 209 F. 721; Id., 235 U.S. 522, 35 S.Ct. 170, 59 L.Ed. 341] many years ago in which a judgment was entered not only against the union, but against many of the workers for some $300,000. That judgment was finally settled for $216,000. That was paid by the unions and by the American Federation of Labor. In that instance, however, they attached the property of the employees; their houses were under attachment during the entire period of this litigation, which lasted some dozen years, and finally terminated by settlement out of court after judgments were had and entered up.

"From that time on President Gompers was horrified at the ability of plaintiffs to reach out and impose such burdens upon labor unions. But, I am going to make a confession that we ordinarily would not make years ago. In the last dozen years a change has taken place in this attitude on the part of labor. We do not object, in a sense, and under proper circumstances, to being sued in our common name, or to suing in our common name. Not that we like it, but we do not object. Because the entire history of the law has changed—and the relation of labor unions to litigation has changed, and to getting into court and getting out of court. Where at one time we were defendants, and only injunction cases and took our lickings quite frequently, today, in many cases we are both plaintiffs and defendants. Your entire enforcement of the Wagner Act is based upon the vehicle of injunction, and must be used by labor unions; the enforcement of the National Labor Relations Board Act is based upon injunctive decrees, and in those cases where we disagree with employers we have to go before the appellate court and ask for injunctive decrees. You will notice that in the proposed wage-and-hour bill enforcement is by injunctive decree.

"Since 1932, or since the passage of the Norris-LaGuardia Act [29 U.S.C.A. § 101 et seq.] our attitude toward this suability has changed entirely. Today we have not the fear that we did have in the past. * * * So we are not opposed to being sued in proper cases, because we too have to sue in proper cases to obtain our rights.

"Incidentally, it was stated by someone here yesterday that most States do have laws that permit labor organizations to be

---

[1] General Counsel of the American Federation of Labor.

[2] 75th Congress, 3rd Session, H.R. 8892, Serial 17.

[3] Rule 17(b). "Capacity to Sue or Be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held; except that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States."

sued in their proper names or common names, and also to bring suits in law. That is so. We have had, as a result of disputes between the C. I. O. and the A. F. of L., to go into court and seek relief in respect to the funds in one organization or another. We can only do so properly in our own common name. So today labor is not objecting to being sued in its common name."

■ This change of attitude was anticipated some years earlier by the Supreme Court and the impelling reasons for it are cogently expressed by Chief Justice Taft in the opinion in the Coronado case,[4] since when the principle has been adopted or followed by statute or court decision, so that today there is substantial agreement that voluntary labor organizations may sue and are suable in their common name and that funds in the common treasury are subject to execution in suits for torts committed and contracts made in the common enterprise.[5] And in the Plasterers' case,[6] we recognized the drift away from the old rule in saying that because the fictional entity is now recognized by law for the purpose of benefiting and protecting unincorporated associations in both the substantive and adjective senses, as by protection against embezzlement of funds, by giving rights to appeal in statutory arbitrations and before official boards and to represent workers in collective bargaining, *so also* the fictional entity must in common fairness be recognized for the protection of those dealing with such associations and claiming that in such dealing their legal rights have been violated.

■ And this right to sue and be sued in the common name, as the Supreme Court said in the Coronado case, "is after all in essence and principle merely a procedural matter."[7] Substantive rights are unaffected. Members of unions have the same rights and are subject to the same liabilities as before. The entire change relates only to the fact that now they can be sued and can sue by a less cumbersome process.[8] In line with this thought we held in the Plasterers' suit that a judgment obtained in North Carolina against the Plasterers' Union was valid without a state statute authorizing a suit, and that, in thus subjecting the union to suit as an entity, no constitutional right was impaired. Accordingly, we held the North Carolina judgment enforceable in the District of Columbia under the full faith and credit clause of the Constitution. Similarly, we hold that this suit is maintainable in the District of Columbia. A like conclusion in more or less like circumstances was reached by the courts of Mississippi,[9] Nevada,[10] Missouri,[11] Illinois,[12] Washington,[13] Louisiana,[14] and doubtless also in other States where the question arose. And the same right has long been recognized as appropriate in equity through representative suits.[15]

■ Here, as we have seen, the defendant union, by virtue of Congressional enactment, possesses all the rights and privileges enumerated in the Coronado case as the reasons for the recognition of the change in the common law rule,—the right to maintain strikes and the right of exclusive representation of its members. The embezzlement of union funds has been denounced as a crime since 1910.[16]

■ Under the District Law,[17] the union may register and protect its union labels and by Section 47—1502(d)· of the District Code there is a specific exemption from local taxation of funds of labor organizations, "no part of the net earnings of which inures to the benefit of any private * * * individual." It is difficult to think of a clearer expression of legislative recognition than this, or of a more strik-

[4] United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S. Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762.

[5] See Notes 7–14, infra.

[6] Operative Plasterers', etc., v. Case, 68 App.D.C. 43, 52, 93 F.2d 56, 65.

[7] 259 U.S. 344, 390, 42 S.Ct. 570, 576, 66 L.Ed. 975, 27 A.L.R. 762.

[8] Jardine v. Superior Court, 213 Cal. 301, 2 P.2d 756, 759, 79 A.L.R. 291.

[9] Varnado v. Whitney, 1933, 166 Miss. 663, 147 So. 479.

[10] Branson v. Industrial Workers of the World, 1908, 30 Nev. 270, 95 P. 354.

[11] Syz v. Milk Wagon Drivers' Union, Mo.App.1930, 24 S.W.2d 1080.

[12] Dugan v. Internat. Assoc. of Bridge, etc., Workers, 202 Ill.App. 308.

[13] St. Germain v. Bakery & Confectionery Union, 1917, 97 Wash. 282, 166 P. 665, L.R.A.1917F, 824.

[14] Dean v. International Longshoremen's Ass'n, 1936, D.C.W.D.La., 17 F.Supp. 748.

[15] United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 387, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; Jardine v. Superior Court, supra.

[16] Rohde v. United States, 34 App.D.C. 249.

[17] D.C.Code (1940) §§ 48—401, 48—402.

ing admission of the legal existence of the union separate and apart from its individual members, and likewise of the existence of assets as to which the individuals comprising the union have mere beneficial interests. Moreover, in equity actions, and by virtue of Federal statutes, unions have long had continued access to the Federal courts in this jurisdiction.[18] Accordingly, it is neither an extension nor a distortion of present law or practice [19] to hold, as we do, that in the District of Columbia an unincorporated labor union has the capacity in its own name to sue and be sued in an ordinary law action, and may be served with process in accordance with the provisions of Rule 4(d) (3) of the Federal Rules of Civil Procedure.

In the District of Columbia the numerically largest unions have their headquarters. Their organizations are in all substantial respects like the larger corporations of the country. They own or lease large office space. One of them, at least, as Mr. Padway testified before the Committee Hearing, "has several millions of dollars in its treasury." It issues charters to forty-eight State federations of labor. It employs many representatives called "trouble shooters", who go out from Washington to settle strikes or transact other business of the union. These agents are the personal representatives of the President of the union. It would be unthinkable that in such circumstances the union itself should not be answerable for its contracts or its torts made or inflicted by one of them in the common business.

The defendant union represents all of the nonsupervisory employees of the Potomac Electric Company and its branches and substations in the District and in nearby Virginia and Maryland. It contracts directly with the employers and in this case contracted directly with appellants for legal services. It has the same powers and the same rights as the American Federation of Labor or the C. I. O. or the United Mine Workers. It is different only in that it has no affiliates. It has and exercises the right to appear in behalf of its members before the different Government labor boards. In short, it has all the attributes which are pointed out by the Supreme Court in the Coronado case as compelling recognition of such unions as entities for the purposes of suing and being sued.

Accordingly, the judgment of the court below is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

[18] Within the past five years the following are some of the cases which reached this court: Fur Workers Union et al. v. Fur Workers Union et al., 70 App.D.C. 122, 105 F.2d 1, affirmed, 308 U.S. 522, 60 S.Ct. 292, 84 L.Ed. 443; National Federation of Rwy. Workers v. Nat. Mediation Board, 71 App.D.C. 266, 110 F.2d 529, certiorari denied 310 U.S. 628, 60 S.Ct. 975, 84 L.Ed. 1399; Green v. Brophy, 71 App.D.C. 299, 110 F.2d 539; Order of Rwy. Conductors v. Nat. Mediation Board, 72 App.D.C. 299, 113 F.2d 531; Green v. Obergfell, 73 App.D.C. 298, 121 F.2d 46, 138 A.L.R. 258, certiorari denied 314 U.S. 637, 62 S.Ct. 72, 86 L.Ed. 511; Gundersheimer's, Inc. v. Bakery & Confectionery Workers' International Union, 73 App. D.C. 352, 119 F.2d 205; Brotherhood of R. R. Trainmen v. Nat. Mediation Board, 77 U.S.App.D.C. 259, 135 F.2d 780; Switchmen's Union v. Nat. Mediation Board, 77 U.S.App.D.C. 264, 135 F.2d 785, reversed 320 U.S. 297, 64 S.Ct. 95; Brotherhood of Rwy. & Steamship Clerks v. United Transport Service Employees, 78 U.S.App.D.C. 125, 137 F.2d 817, reversed 320 U.S. 715, 64 S.Ct. 260; United Transport Service Employees v. Nat. Mediation Board, —— U.S.App.D.C. ——, 141 F.2d 724; Order of Rwy. Conductors v. Nat. Mediation Board, —— U.S.App.D.C. ——, 141 F.2d 366; National Federation of Rwy. Workers v. Nat. Mediation Board, —— U.S.App.D.C. ——, 141 F.2d 725; Millis v. Inland Empire Dist. Council, —— U.S.App.D.C. ——, 144 F.2d 539.

[19] See National Ass'n of Industrial Agents v. C. I. O., D.C., 25 F.Supp. 540.