**MULLENDORE TRUST COMPANY, by A. C. Adams, Mildred M. Adams and Bessie M. Johnson, Trustees, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 6155.**

United States Court of Appeals Tenth Circuit.

Oct. 21, 1959.

Donald P. Moyers, Tulsa, Okl. (J. H. Conway, Jr., Tulsa, Okl., on the brief), for appellants.

James P. Turner, Department of Justice, Washington, D. C. (Robert S. Rizley, U. S. Atty., Tulsa, Okl., Lee A. Jack-

son, I. Henry Kutz and Helen A. Buckley, Department of Justice, Washington, D. C., on the brief), for appellee.

Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought for a refund of income taxes paid for the years 1950, 1951 and 1952.[1] The taxpayer was a trust created by agreement and, during the term of its existence, was admittedly an association within the meaning of Section 3797(a)(3), Internal Revenue Code of 1939, 26 U.S.C.A. § 3797(a)(3), and therefore taxable as a corporation. The question presented is whether the trust was an association, taxable as a corporation for income tax purposes, during the period of liquidation and distribution of assets after the date of expiration provided for in the agreement. The trial court held that it was.

The facts are not in dispute. The trust agreement was dated May 1, 1929 and the trust created thereby was to expire on May 1, 1949. The trustees were granted broad powers to manage and control the trust property, including the power to invest, reinvest, and to sell. The activities of the trust throughout its life included ranching, oil and gas operations, and investing in the securities of corporations. On May 1, 1949, the assets of the trust consisted of cash, accounts receivable, livestock, corporate stocks, oil and gas leases and royalties, extensive ranch and farm lands, together with other real estate holdings, all of a total value of approximately $3,800,000.

The trustees proceeded with a plan of liquidation and distribution agreed upon sometime prior to the termination date.[2] During the latter part of 1949 and the whole of 1950, substantially all of the assets, with the exception of the ranches and livestock, were distributed in kind to the beneficiaries of the trust. These distributions caused no tax problems. The trustees agreed to sell the ranches and livestock in order to avoid the difficulties and disadvantages which they thought would result from an attempt to distribute them to the trust beneficiaries. To insure the greatest financial returns from these proposed sales, the trustees decided to continue the ranching operations as in the past so that the properties could be sold as going concerns.[3]

Section 3797(a)(3), Internal Revenue Code of 1939, provides that "The term 'corporation' includes associations, joint-stock companies, and insurance companies." This court has had occasion to consider the taxability of business trusts under the aforesaid statute, or ones similar to it. Cooper v. C. I. R., 10 Cir., 262 F.2d 530, certiorari denied 359 U.S. 944, 79 S.Ct. 724, 3 L.Ed. 2d 677; Fletcher v. Clark, 10 Cir., 150 F.2d 239, 166 A.L.R. 1456, certiorari denied 326 U.S. 763, 66 S.Ct. 144, 90 L.Ed. 459; C.I.R. v. Nebo Oil Co., Trust, 10 Cir., 126 F.2d 148, certiorari denied Nebo Oil Co. v. Helvering, 317 U.S. 636, 63 S.Ct. 27, 87 L.Ed. 512; Hamilton Depositors Corp. v. Nicholas, 10 Cir., 111 F.2d 385; Ross Lewis Trust v. C. I. R., 10 Cir., 110 F.2d 937. These cases followed Morrissey v. C. I. R., 296 U.S. 344,

---

1. The taxes for which refund was sought were: 1950—$47,451.14; 1951—$153,704.-71; 1952—$237,280.35; a total of $438,-436.20.

2. The plan was in pursuance of the trust agreement provision that:
   "This trust shall not continue in any event longer than for the term of twenty years, at which time the then board of trustees shall proceed to wind up its affairs, liquidate its assets, and distribute the same among the certificate holders of the beneficial interests according to the number of interests held by them.

"(b) For the purpose of winding up their affairs and liquidating the assets of the trust, the then board of trustees shall continue in office until such duties have been performed."

3. The trial court found: "13. The trustees, in the exercise of sound business judgment, decided that the ranches might be sold to a better advantage if the livestock and equipment were retained on the ranches so that the ranches could be sold as operating properties."

56 S.Ct. 289, 80 L.Ed. 263, which sets forth the attributes which, if present in a trust formed to carry on a business, subject the trust to corporate taxes. These attributes were summarized in the Cooper case as "1. A continuing entity throughout the trust period; 2. Centralized management; 3. Continuity of the trust, uninterrupted by death among the beneficial owners; 4. Means for transfer of beneficial interests; 5. Limitation of personal liability of participants to property embarked in the undertaking." [262 F.2d 534.] The taxpayer concedes that these attributes were present in the trust before the expiration date, but urges that thereafter the activities of the trustees were performed solely for the purpose of orderly liquidation and distribution—not for business purposes. The trial court found that at the time the trustees were pursuing the plan of liquidation, they were also pursuing the objective of continuing business for profit, and it is clear that the trust income of this period resulted from the continued use of some of the ranching assets, as well as the sale of others.[4] Under the plan of liquidation, the operation of the ranches was to be continued as before, so that they could be sold as going businesses. During the liquidation period the trust was a continuing entity with respect to the operation of the ranches; there was centralized management; there was continuity of the trust, uninterrupted by death among the beneficial owners; and there was a limitation of personal liability of participants to property embarked in the undertaking. Where all these criteria are present, the organization is ordinarily to be regarded as a corporation for tax purposes. In Fletcher v. Clark, supra [150 F.2d 240], we said that "these are the recognized indices for determining whether a given entity is an association subject to tax on the same basis as that of corporations. But they are not an unyielding rule of thumb. Each case must be decided by reference to its own peculiar facts, particularly whether the undertaking bears a fair resemblance to corporations." While it may be true that, during the tax years, the trustees were motivated primarily by a desire to effect an advantageous liquidation, the fact remains that the ranching properties continued to be operated as a business under the same form of organization that existed during the period when the trust was concededly an association within the meaning of Section 3797(a)(3). We can perceive of no reason why a trust, having essentially corporate characteristics, which continues to operate ranch properties for a number of years while in the process of liquidation, should not be taxed as a corporation the same as before. The findings of the trial court that the taxpayer did so operate are not clearly erroneous.

Affirmed.

4. The principal sources of income for the years 1950, 1951 and 1952 were:

| | 1950 | 1951 | 1952 |
|---|---|---|---|
| Livestock Sales (exclusive of breeding herd), Crop Sales and Miscellaneous Ranch Income | $198,032.18 | $258,949.41 | $194,157.46 |
| Oil and Gas Sales | 76,683.37 | 14,484.75 | 7,451.32 |
| Rents | 13,278.14 | 5,509.81 | 5,176.92 |
| Breeding Herd Sales | 65,155.10 | 236,405.14 | 220,140.91 |
| Land Sales | 15,510.29 | 87,861.02 | 880,830.17 |
| Sale of Partnership Interest Pawhuska Ranch | | $316,133.52 | |