E. P. COVERDELL, Plaintiff-Appellee,

v.

MID–SOUTH FARM EQUIPMENT AS-
SOCIATION, Inc.,

and

Mid-South Farm Equipment Association
Insurance Trust, Defendants-
Appellants.

No. 15279.

United States Court of Appeals
Sixth Circuit.

June 26, 1964.

Thomas F. Turley, Jr., Memphis,
Tenn., Cooper Turner, Jr., Memphis,
Tenn., on brief; Canada, Russell & Tur-
ner, Memphis, Tenn., of counsel, for ap-
pellants.

Leo Bearman, Jr., Memphis, Tenn., Leo
Bearman, Sr., Memphis, Tenn., on brief,
for appellee.

Before PHILLIPS, Circuit Judge,
MAGRUDER, Senior Circuit Judge, and
WEINMAN, District Judge.

WEINMAN, District Judge.

This is an appeal from a jury verdict
and the judgment rendered thereon

wherein the jury, for breach of contract, awarded $18,750.00 to E. P. Coverdell, plaintiff,[1] against defendants Mid-South Farm Equipment Association, Inc. (hereinafter referred to as the Association) and Mid-South Farm Equipment Association Insurance Trust (hereinafter referred to as the Trust).

Plaintiff is in the insurance business specializing in creating and establishing group life insurance plans. Defendant Association is a Tennessee Corporation whose members are basically farm equipment dealers in Arkansas, Mississippi, Tennessee and the Panhandle of Missouri; there are approximately 530 members, each being a firm and each firm having one or more employees. Defendant Trust was created by the Association to establish a plan of group life and accident and health insurance for those members of the Association who desired to subscribe to the plan.

Plaintiff and Thad Caraway, a trustee of the Trust and executive director and secretary of the Association, met personally for the first time at a convention in August of 1960. Caraway previously had made inquiry and was advised by the California Equipment Dealers Association that Union Central Life Insurance Company (hereinafter referred to as Union Central) and Coverdell had written a similar group policy for it. At this first meeting, some preliminary discussion was had regarding a group insurance plan for the Association; however, Coverdell did not have the necessary materials with him and it was decided that the two should meet in Memphis on September 20. At that second meeting, it was decided that Coverdell should conduct a survey by mail in the name of the Association to determine from the members how many would be interested in insurance of this nature. Following the survey, both Coverdell and Caraway agreed that each should submit a résumé of the plan to the Board of Trustees.

On November 4, 1960, a meeting of the Board of Trustees was held at the office of the Association in Memphis. Present were Coverdell; four of the trustees; Mr. McCroskey, a vice-president of Union Central; and Mr. Earl Brooks, Manager of Union Central's Memphis office. It should be noted that Coverdell, in the year 1960, was licensed by the State of Tennessee as an insurance agent for Union Central. He was so licensed because under Tennessee law he was required to be licensed by one particular company though he could place a group policy in a company other than Union Central.

That meeting lasted two and a half hours and eighty-five questions which had been prepared by the trustees were discussed, as were the qualifications of plaintiff. When plaintiff left the meeting, he understood that a competitor was to be interviewed that afternoon.

There is little or no dispute as to the foregoing facts. The dispute arises as to subsequent events. On the same evening, November 4, Coverdell was invited by Caraway to the Petroleum Club where three of the four trustees who had attended the meeting, and their wives, were present. Coverdell testified, in effect, that he was informed by the trustees that he was hired under a personal service contract to organize the group insurance plan, to set it up in workable order, to place it with a company and to solicit the membership. He further testified that the next day he flew to Atlanta and worked the entire weekend to prepare the plans and materials for the solicitation campaign. He then sent the materials to Caraway. He also testified that he cancelled an appointment in Texas so as to make himself completely available in Memphis.

On November 19, Coverdell was informed that the trustees had held another meeting with his competitor and it had been awarded the contract.

One further point should be noted and that is that much of the material prepared by Coverdell to be used in soliciting the group insurance was subse-

---

1. The parties will be designated in this Court as they were in the Trial Court.

quently used verbatim in soliciting the group insurance through Coverdell's competitor.

Coverdell sued the Association and the Trust for breach of contract and damages which represented the loss of commissions he would have received from the sale of the insurance.

On appeal, the defendants argue 1) that no personal employment contract between plaintiff and defendants existed or could have existed; 2) that the trustees did not have the power to make the alleged contract; 3) that the Trust cannot be sued as an entity; 4) that the trustees were not and could not be the agents for the Association and 5) that the jury's verdict was excessive.

*As to the argument that no personal employment contract between plaintiff and defendants existed or could have existed.* The defendants, in their brief, state:

"  *  *  *  we come first to the question whether a soliciting agent of a life insurance company has any cause of action against a prospective insured upon which he can collect damages as for breach of contract when the prospect, after first indicating a willingness to purchase insurance, changes his mind and refuses to complete the purchase." [2]

This statement of the question ignores the fact that plaintiff tried his case, and the Trial Judge charged the jury, on the theory that plaintiff was hired under a personal service contract to set up a group insurance plan and then place it with an insurance company.

■ Further, in support of their argument, defendants cite a Tennessee statute which provides:

"Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured.  *  *  *." [3]

However, this statute does not prevent or make illegal a personal service contract to set up a group insurance plan. There was sufficient evidence in the record from which the jury could find, as it did, that a personal service contract existed.

■ *As to the argument that the trustees did not have the power to make the alleged contract.* The power of the trustees to make the alleged contract is clear. A review of the Trust Agreement shows how extensive the trustees' powers were. They had the power to apply for and accept as part of the Fund group policies issued to them in their names as trustees and providing life and accident and health insurance; [4] to construe the provisions of their own Trust; [5] to promulgate such rules and regulations as may, in their discretion, be proper or necessary for the sound and efficient administration of the Trust; [6] to act by majority vote; [7] to borrow money and to secure the loan by pledge or mortgage of trust property. [8]

And quite conclusive of the wide scope of their power is the following:

"Section 16. The Trustees are expressly authorized and empowered, at any time and from time to time, to execute and deliver any and all instruments in writing necessary or appropriate for the administration or handling of the Trust.

"Section 17. The Trustees are further authorized and empowered to do, at any time and from time to time, any and every act and thing, and to enter into and to carry out

2. Brief on Behalf of Defendants-Appellants, p. 24.

3. Section 56–705, Tennessee Code Annotated.

4. Appendix to Brief of Defendants-Appellants, Vol. II, p. 401a.

5. Id. at p. 402a.

6. Ibid.

7. Id. at p. 404a.

8. Id. at p. 390a.

any and every agreement with respect to the trust estate or any part thereof which they would have the right to do if they were individual owners thereof as they may deem in the best interests of the Trust, and the subscribers thereto, without being limited in any way by the grant of specific powers, EXCEPT as to the limitations contained in Article VIII. Sections 2, 3, and 4." [9] [Article VIII deals with amending the Trust Agreement and Declaration of Trust].

*As to the argument that the Trust cannot be sued as an entity.* The plaintiff brought action against the Trust as an unincorporated association or organization by serving the Secretary of State pursuant to Section 20–223, Tennessee Code Annotated, which, at the time the suit was filed, provided:

"Any unincorporated association or organization, whether resident or nonresident,[10] doing or desiring to do business in this state by performing any of the acts for which it was formed, shall, before any such acts are performed, appoint an agent in this state upon whom all process may be served, and certify to the clerk of the circuit court of each county in which said association or organization desires to perform any of the acts for which it was organized the name and address of such process agent. If said unincorporated association or organization shall fail to appoint the process agent pursuant to this section, all process may be served upon the secretary of the state of Tennessee. Upon such service, the secretary of state by registered return-receipt mail shall forward a copy of the process to the last known address of such unincorporated association or organization. Service upon the process agent ap-

pointed pursuant to this section or upon the secretary of state, if no process agent is appointed, shall be legal and binding on said association or organization, and any judgment recovered in any action commenced by service of process, as provided in this section, shall be valid and may be collected out of any real or personal property belonging to the association or organization."

The crucial question, of course, is whether the Trust is an "unincorporated association or organization." Rule 17 (b) of the Federal Rules of Civil Procedure provides, in part:

" * * * In all other cases [other than an individual or a corporation] capacity to sue or be sued shall be determined by the law of the state in which the district court is held * * *."

■ Therefore, the District Court was required to apply the law of Tennessee to determine the capacity of the Trust to be sued as an unincorporated association or organization. Neither counsel for plaintiff nor counsel for defendants have cited any case decided by a Tennessee Court which is directly in point. The Court has also been unable to find a Tennessee case in point; however, a Federal District Judge sitting in Tennessee has considered this question. In Rittenberry v. Lewis, et al., and four consolidated cases,[11] the District Court stated, regarding a plaintiff in one of the consolidated cases:

"Plaintiff sought to secure service of process against the United Mine Workers of America Welfare and Retirement Fund rather than the individual trustees. T.C.A. § 20–223, as amended in 1963, provides for service of process on 'non-resident trusts' under certain circumstances. A literal reading would lead to the

9. Id. at p. 390a and 391a.

10. The statute has been amended, once in 1959 and once in 1963, and now includes, after the words "whether resident or nonresident," the words "including

nonresident partnerships and nonresident trusts."

11. 222 F.Supp. 717 (D.C.E.D.Tenn.1963), aff'd, 333 F.2d 573 (6 Cir. 1964).

conclusion that the trust entity could be sued as such. Defendant contends that the trust must be sued through its trustees. Yonce v. Miners Memorial Hospital Association, (D.C.W.D.Va.) 161 F.Supp. 178, 188; Restatement of the Law of Trusts, (2d Ed.) Vol. 1, Sec. 2, p. 2. As a general rule, it does appear that in suits against a trust, the trustee is the proper party defendant. 54 Am.Jur., Trusts, Secs. 570, 584, 586, 588. The Court is of the opinion that the better rule is to require service upon the trustees in suits against the trust and that appears to be in accordance with the overwhelming weight of authority. However, the plaintiff will be allowed to amend its complaint so as to name the trustees as defendants and secure service of process accordingly  *  *  *."[12]

■ This Court agrees with the foregoing conclusion and finds that the trustees would have been the proper parties defendant in the instant case rather than the trust.

It must be recalled that the statute under which plaintiff sued the Trust is a "service of process" statute and not one which was enacted to change prior law regarding the capacity of a trust to sue and be sued. This observation is bolstered by the fact that the statute speaks of "nonresident trusts" but does not mention "resident trusts" such as the Trust in this case. It is not at all probable that legislation would be enacted to change the capacity to sue and to be sued of a nonresident trust only.

This Court has carefully considered the cases cited by counsel for plaintiff to support the contention that the Trust should be treated as an unincorporated association or organization. Great reliance is placed upon Pavlovscak v. Lewis et al.[13] In that case, the Court of Appeals affirmed the District Court's determination that the trust fund under consideration was to be treated as a business suable under Pennsylvania law in the same manner as an unincorporated association. The District Court had relied upon Stampolis v. Lewis[14] wherein the Superior Court of Pennsylvania had considered the capacity of the same fund and had treated it as a business unit suable in the same manner as an unincorporated association.

Subsequently, and it is discussed by the Third Circuit in its denial of a petition to reconsider the Pavlovscak case,[15] the Supreme Court of Pennsylvania had the same fund before it in Myhalyk v. Lewis, et al.[16] and approved the result in Stampolis but with a different rationale.

As stated by the Third Circuit:

" *  *  * while Stampolis indicated that the Trustees of the United Mine Workers of America Welfare and Retirement Fund were suable in Pennsylvania as an unincorporated association, the Myhalyk case has now established that this enterprise is suable in Pennsylvania, but as a foreign 'corporation or similar entity' under Rule 2176, Pennsylvania Rules of Civil Procedure, 12 P.S.Appendix, p. 482. In addition, Rules 2179 and 2180 provide a procedure for the service of process upon such an entity in a county where it regularly conducts business by personally serving the pleading upon the 'agent or person for the time being in charge of,  *  *  * any office or usual place of business of the corporation or similar entity'.  *  *  *"[17]

12. Id. at p. 723.

13. 168 F.Supp. 839 (D.C.W.D.Pa.1958), aff'd, 274 F.2d 523 (3 Cir. 1959).

14. 186 Pa.Super. 285, 142 A.2d 348 (1958), allocatur refused, Pa. Supreme Court, 1958, cert. denied, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959).

15. 274 F.2d 526 (3 Cir. 1960).

16. 398 Pa. 395, 158 A.2d 305, 88 A.L.R. 2d 486 (1960).

17. 274 F.2d at p. 527.

The important point for our purpose is that in the Pavlovscak case the District Court and the Third Circuit were merely following the law as announced by the Courts of Pennsylvania regarding the capacity of the fund to sue and be sued. Therefore, that case does not aid plaintiff in his argument.

This Court has also considered decisions holding labor unions to be suable as entities [18] and trusts to be suable as associations for taxing purposes [19] but finds all of those cases to be inapplicable to the question of a trust to sue and be sued as an entity.

The Court therefore concludes that this action cannot be maintained against the trust, and that the trust could be sued only through its trustees. The judgment against the trust therefore must be vacated.

*As to the argument that the trustees were not and could not be agents for the Association.* Regarding this point, the Trial Court charged the jury:

> "Next, Mr. Coverdell must show that the trustees with whom he dealt had authority from the Association and the Trust to make the contract he claims he had and on which he sues. In other words, neither defendant can be legally bound unless the trustees dealing with Mr. Coverdell had authority from that defendant to make the contract which Mr. Coverdell contends he made." [20]

The charge of the Trial Court was correct and there was presented to the jury a question of fact. There was clearly sufficient evidence in the record to permit the jury to find, as it did, that the trustees were agents for the Association.

*As to the argument that the verdict was excessive.* The defendants argue that since the group plan written by plaintiff could have been cancelled at any time, the damages awarded by the jury were speculative.

The Court rejects this argument. The plaintiff testified that of the thirty-three plans of group insurance which he had set up, not one had been cancelled,[21] but instead all of his plans had grown larger in coverage.[22] He also testified that two of his clients changed insurance companies but retained him personally for his services.[23]

The rule which precludes recovery of uncertain and speculative damages applies only to situations where the fact of damage is uncertain, not where the amount is uncertain. In this case, the jury was warranted in finding that the plaintiff was damaged. It was not necessary for the plaintiff to prove the amount of the damages to a mathematical certainty. There was substantial evidence in the record, which together with the reasonable inferences to be drawn therefrom, provided a reasonable basis for the jury's verdict. That is all that is required.[24]

18. United Mine Workers of America v. Coronado Coal Company, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922); American Federation of Musicians v. Stein, 213 F.2d 679 (6 Cir. 1954); Van Sant v. American Express Co., 169 F.2d 355, 372 (3 Cir. 1948); Busby v. Electric Utilities Employees Union, 79 U.S.App.D.C. 336, 147 F.2d 865 (D.C.Cir. 1945).

19. Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935); Mullendore Trust Company v. United States of America, 271 F.2d 748 (10 Cir. 1959); Estate of Scofield v. Commissioner of Internal Revenue, 266 F.2d 154, 166 (6 Cir. 1959).

20. Appendix to Brief of Defendants-Appellants, Vol. I at p. 248a.

21. Id. at p. 18a.

22. Id. at p. 39a.

23. Id. at p. 18a.

24. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Story Parchment Company v. Paterson Parchment Paper Company, 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Brown v. Alkire, 295 F.2d 411, 415-416 (10 Cir. 1961).

In accordance with the foregoing, the judgment of the District Court regarding the Association is affirmed and, as previously stated, the judgment regarding the Trust is vacated and remanded.