**In re PRECISE TOOL & GAGE CO., INC., Debtor in Possession.**

**PRECISE TOOL & GAGE CO., INC., Plaintiff,**

v.

**MULTIFORM DESICCANTS, INC. and Cullen Industries, Defendants.**

Bankruptcy No. 3–83–00523.
Adv. No. 3–83–0581.

United States District Court,
E.D. Tennessee.

June 26, 1984.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT L. TAYLOR, District Judge.

This cause came on to be heard on February 16 and 17, 1984, before the Honorable Clive W. Bare, United States Bankruptcy Judge. Upon consideration of the entire record, including the pleadings, briefs, testimony of witnesses, exhibits, and statements of counsel, the Court makes the following findings:

### FINDINGS OF FACT.

On February 2, 1982, the plaintiff debtor contracted to manufacture and sell to the defendants a rotary dricap machine. The contract provided that the debtor would build a machine capable of producing both 11/32 inch and 1/2 inch diameter dricaps

at the rate of at least 8,100 pieces per hour. Prior to delivery the machine was to have been operational for at least forty consecutive hours at the debtor's place of business. Delivery was to be made at the defendant Multiform's place of business by May 15, 1982.

Pursuant to the contract the defendants were to engage a design firm to update the design of the machine in accordance with the latest technology. Note 5 of the contract provided:

Any design modifications shall be approved by Multiform Desiccants, Inc. Prices for any modification shall be evaluated in terms of parts being replaced versus parts being added and the price of the machine shall be adjusted at the time of approval.

The contract price was $137,000.00, with $50,000.00 paid with the purchase order, $50,000.00 due upon approval at the debtor's place of business, and the final $37,-000.00 due thirty days after delivery.

Prior to this time only one other such machine existed. The parties intended to improve upon the design of the original machine by replacing much aluminum construction with steel, stainless steel and plastic construction and by making a machine capable of efficiently producing two diameters of dricaps.[1]

The defendants contracted with a third party to improve the plans of the original machine. The debtor and the defendants did not provide in the contract a specific date on which the updated drawings would be received. Apparently, Joseph Jakubowski, the debtor's president, anticipated receiving the drawings within a month after contracting. The defendants instructed the debtor to begin work on specified portions of the drawings and subsequently provided the updated drawings as available. The last drawings were not provided until early April. Occasionally, the debtor had to change parts and assemblies after produc-

---

1. A dricap is a small plastic tube containing a desiccant (or drying agent) for use, among other things, in electrical and pharmaceutical products.

tion as a result of revised drawings received from the defendants.

In April the debtor experienced cash flow difficulties. Jakubowski requested James Bausch of Multiform to pay the second $50,000.00 installment early in order to make working capital available to the debtor. The parties dispute the precise nature of the ensuing discussions. However, the court is persuaded that the debtor agreed, in exchange for early payment of $25,-000.00 of the next installment to forego $5,000.00 of the charges which had already accrued for modifications.

The design changes consisted not only of changes in material (e.g. aluminum to stainless steel, aluminum to steel and aluminum to plastic) but also of changes in the actual details of components. Apparently, some changes had a "ripple" effect, resulting in subsequent problems in fitting parts and subassemblies together. The debtor communicated these difficulties to Fred Boczkowski of Multiform who either furnished revised drawings or instructed the debtor to machine the necessary clearances.

Boczkowski made three separate visits in April and July to the debtor's place of business to check on the progress of the machine's construction. His last visit in late July lasted approximately a week, during which he worked with the debtor's employees in attempting to resolve the various design and assembly difficulties. At least at one point Boczkowski commented favorably on the workmanship and acknowledged that the nature of certain difficulties lay in the realm of design rather than workmanship.

The debtor prepared an itemized statement (dated July 27, 1982) for $23,215.00, reflecting the additional costs due to design revisions. After Boczkowski's lengthier visit at the end of July, the debtor prepared another statement for $6,679.00 (dated August 5, 1982) reflecting additional costs of assembly and "try-out time" during a week-long period of around-the-clock work on the machine. Much of this work consisted of changes suggested by Boczkowski in an effort to resolve the difficulties encountered in assembling an operational machine. The debtor sent both statements to the defendants simultaneously in August.

Meanwhile, the defendants were experiencing a severe backlog problem in filling orders for dricaps. The defendants elected to take delivery of the machine although it had not been operated for forty consecutive hours at the specified rate of production. The defendants picked up the machine on August 6. The defendants paid the balance of the second installment at the debtor's insistence.

No later than September 10 the defendants had the machine producing $11/32$ inch dricaps. By September 17, 1982, the machine was producing dricaps at the targeted rate of 8,100 pieces per hour. By October or November the machine was producing $11/32$ inch dricaps at the rate of 10,000 pieces per hour. Due to the large production backlog in reference to $11/32$ inch dricaps, the defendants elected to manufacture only $11/32$ inch dricaps for several months. In May 1983 the defendants undertook to get the machine operational for the production of $1/2$ inch dricaps. Shortly afterwards, the machine produced $1/2$ inch dricaps at the rate of 9,300 per hour.

The debtor did not keep precise records regarding the amount of labor required for each design and construction revision. However, the debtor prepared the July 27 and August 5 statements by utilizing estimates of time required for the work. The estimates were prepared by Jakubowski and Yogendra Loomba. These estimates were based upon daily involvement in the project and firsthand knowledge of the work performed. Both individuals have many years of experience and expertise in estimating the cost of machining parts. The debtor calculated the additional cost by comparing the material and labor required for a given part under the original design to the material and labor required under the updated or revised design. The difference between the two constituted the addi-

tional charges above the original contract price.[2]

James Bausch of Multiform orally indicated to the debtor that he considered the additional charges exorbitant. On November 2, 1982, Multiform sent to the debtor a $29,894.00 statement, purportedly representing costs incurred by Multiform in making the machine operational. The statement reflected thirty days of work by three operators and one engineer. However, Fred Boczkowski of Multiform, the engineer, was able to point to only three specific problems encountered: (1) misaligned plates in the first form station, (2) errors in the length of the shafts in the second form station and (3) errors in the tolerances of the forming heads of the second form station. The misaligned plates were corrected by redrilling the plates in three days. The shafts were corrected either by installing spacers or remaking the shafts. The form heads were returned to the debtor, who subsequently cured the defect.

Significantly, in the November 2 letter Multiform accepted responsibility for "approximately seventy-five percent" of the delay in delivery of the machine due to engineering changes after the purchase order was made. On September 8, 1982, approximately one month after receiving the machine, the defendants paid the final installment of $37,000.00. The defendants, however refused to pay the additional charges submitted by the debtor.

## CONCLUSIONS OF LAW

■ The three-month delay in delivery of the machine was the result of the defendants' own delay in making available a workable, revised design. The debtor is therefore excused from the resulting delay in its performance. Tenn.Code Ann. § 47–2–311(3)(a) (1979).

■ Concededly, the machine did not conform to the contract when delivered to the defendants. It did not produce dricaps at the rate specified in the parties' agreement. However, the defendants unequivocally signified their acceptance of the nonconforming machine after a reasonable opportunity to inspect the machine. Tenn. Code Ann. § 47–2–606(1)(a) (1979). The defendants are consequently bound to pay for the accepted goods at the contract rate. Tenn.Code Ann. § 47–2–607(1) (1979).

■ The parties dispute, of course, the precise nature of the contract rate. Note 5 of the purchase agreement clearly contemplated costs above the original $137,000.00 contract price for any modifications in the design of the machine. The additional price was to be "evaluated in terms of parts being replaced versus parts being added ...." The defendants' contention that this provision envisioned only additional material (and not labor) costs is utterly without merit. This was a contract for the manufacture of a machine essentially from raw material. The debtor did not purchase prefabricated parts. Rather, the production of any given part of necessity involved the use of both material and labor. The expenditure of labor to machine the part out of the raw metal or plastic was an integral factor in the cost of that part. The contract plainly envisioned additional charges for the higher cost of both material and labor required to produce a given modification in the original design.

■ The debtor's statements of July 27 and August 5 constitute ample basis for recovery. The defendants contend that the debtor's figures are insufficient because the debtor failed to produce employee time records detailing the precise amount of time devoted by each individual employee to each particular design modification. However, the debtor's figures were based upon daily, firsthand involvement of both Jakubowski and Loomba in the production process. These men were familiar with

---

**2.** Steel and stainless steel parts involve higher material and labor costs than do aluminum parts. Steel weighs more than aluminum. Therefore, a part of a given size made out of steel will have greater weight and, thus, higher material cost. Also, since steel is harder than aluminum, steel parts require more labor to machine into the required dimensions.

both the labor and material utilized in making the changes. In addition, both men had considerable experience and expertise in estimating such production costs. The debtor is not required to prove contract damages to a mathematical certainty. *Coverdell v. Mid-South Farm Equipment Association*, 335 F.2d 9 (6th Cir.1964). The law does not require exactness of computation. Contract damages are allowable when they are not simply remote and speculative but are proved to a reasonable certainty. *Act-O-Lane Gas Service Co. v. Clinton*, 35 Tenn.App. 442, 245 S.W.2d 795 (1951). The debtor's additional charges of $29,894.00 were proven to a reasonable certainty.

■ However, the court is persuaded that Jakubowski agreed in April to forego $5,000.00 of additional charges in exchange for early partial payment of the second installment. The defendants' accelerated payment constituted ample consideration for the debtor's promise to waive the $5,000.00 in charges. Consequently, any recovery by the debtor of the additional charges must be reduced by $5,000.00.

■ Furthermore, the defendants' acceptance of the nonconforming machine did not impair the defendants' right to a remedy for the nonconformity. Tenn.Code Ann. § 47–2–607(2) (1979). The defendants are entitled to recover as damages for the nonconforming tender the difference between the value of the machine accepted and the value of the machine if it had been in conformance with the contract. Tenn.Code Ann. § 47–2–714 (1979). The courts have generally accepted the cost of repair as an acceptable, objective measure of the difference in value. J. White & R. Summers, *Uniform Commercial Code* 377 (2d ed. 1980).

However, the court is not persuaded that the defendants' November 2 "cost breakdown" presents an acceptable or accurate picture of the expenses necessary to put the machine in conformance with the contract. The inflated nature of the figures, coupled with James Bausch's statement to Jakubowski that if the debtor persisted in demanding the additional charges "we're going to incur expenses, too," leave the impression that the figures were essentially compiled for the purpose of offsetting the debtor's charges. Yet clearly some effort was required to correct at least some defective work on the machine. The proof indicated that three days of redrilling was required to correct misaligned plates. New shafts had to be made for the second form station.[3] Apparently, the defective form heads were satisfactorily replaced by the debtor. That is the extent of specific manufacturing defects to which Boczkowski could point.

The court recognizes that due to the defendants' severe backlog in dricap orders their efforts to make the machine operational were presumably made as rapidly and efficiently as possible. Boczkowski testified that no further changes in design were required during this period. At least thirty days were required to make the machine produce at the targeted rate. The court will, therefore, accept the defendants' figure of $3,768.00 as the cost of Boczkowski's time invested in making the machine conform to the contract.[4]

The court, however, rejects the defendants' figures based on the labor of the three operators who operated the machine twenty-four hours a day during this period. Boczkowski was the manufacturing engineer overseeing and intimately familiar with the construction of the machine.

---

**3.** The defendants indicated that these shafts were remanufactured by a third party but failed to submit any evidence to show the cost of this work.

**4.** The contract, of course, specified a machine capable of producing both $^{11}/_{32}$ inch and ½ inch dricaps. The machine did not produce ½ inch dricaps at the targeted rate until the following May. However, the decision to forego attempts to make the machine operational in the ½ inch mode was a production decision by the defendants based upon the large backlog in orders for $^{11}/_{32}$ inch dricaps. In May the machine was able to produce ½ inch dricaps at a rate exceeding the targeted rate a short time after efforts were devoted to making the ½ inch mode operational.

However, the court is not persuaded that these operators were engaged in actual repair work twenty-four hours a day while Boczkowski only worked or supervised work on the machine eight hours a day. The court is not satisfied that the labor of these operators was demonstrably connected with repair work necessitated by defective construction on the part of the debtor.

In conclusion, the debtor is entitled to recover the additional charges of $29,894.00 minus the $5,000.00 agreed-upon reduction and further reduced by the defendants' counterclaim for $3,768.00 in labor required to make the machine fully operational.

In accordance with Rule 52 of the Federal Rules of Civil Procedure, this report constitutes findings of fact and conclusions of law.

### JUDGMENT

Upon the findings of fact and conclusions of law of the United States Bankruptcy Judge, as well as his report thereon, the United States District Court finds that the plaintiff Precise Tool & Gage Co., Inc. is entitled to a judgment against the defendants Multiform Desiccants, Inc. and Cullen Industries in the amount of $21,126.00.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the plaintiff Precise Tool & Gage Co., Inc. recover of the defendants Multiform Desiccants, Inc. and Cullen Industries the sum of $21,126.00, and its costs of action.