COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



THE RAY MALOOLY TRUST,

                            Appellant,

v.

CHRIS JUHL AND MARIA JUHL,

                            Appellees.

§

§

§

§

§

No. 08-02-00512-CV

Appeal from the

County Court at Law No. Three

of El Paso County, Texas

(TC# 99-1746)




MEMORANDUM OPINION
           In this breach of contract case, The Ray Malooly Trust appeals a judgment against
it for $222,000 plus attorney’s fees. We affirm.
Factual Summary
           In 1972, Ray Malooly and Earl West signed a lease agreement for West to operate
a laundromat at 8836 Alameda. The ten-year lease included two five-year options to
renew. In 1980, Malooly approved of West’s assignment of the lease to Maria Cooper,
who married Chris Juhl in 1981. In 1993, Chris Juhl entered into a new contract with
William Abraham, who was the leaseholder at that time. This lease was for twelve years--three years initially with three options to renew--and contained a non-competition clause
barring the landlord from leasing space in the center to another similar business. It also
contained a clause binding successors to the leaseholder, and instructions for exercising
the options.
           The laundromat never moved from its original retail space at 8836 Alameda, but
this new lease bore the address of “a portion of the premises situated at 8828 Alameda,”
an address within the same shopping center, adjacent to the laundromat. Although the
laundromat’s location never changed, different addresses--8828, 8836, and 8830--were
used over the years to designate its address. Over the life of the lease, the Trust addressed
mail to Juhl at 8830 Alameda, and Malooly admitted it was not unusual for shopping
centers to shift addresses without any actual physical changes in the center.
           In 1995, Juhl exercised his option to renew by properly notifying the leaseholder. 
The option period was to begin in March 1996. However, the Trust notified Juhl in
January of 1996 that it was the new leaseholder, and asked Juhl to verify his lease. At no
point did the Trust assert it was not provided a copy of the Juhl lease by the predecessor
landlord. Malooly claimed Juhl orally informed him he had no lease on the property, but
was operating on a month-to-month basis; Juhl disputed this. To the contrary, he asserts
he promised to continue paying rent and abiding by the terms of the lease. Juhl continued
operating the laundromat and making rent payments under the terms of the lease through
the first three-year option period. In 1998, Juhl again timely notified Malooly he intended
to exercise his option to renew. At about the same time, Malooly rented space within the
same shopping center to another laundromat, at much higher rental rates. Malooly also
sent a letter to Juhl alleging there was no lease between them, and characterizing Juhl’s
tenancy as month-to-month. There is no evidence that prior to trial, Malooly ever claimed
Juhl breached his lease by paying rent and improving portions of 8836 Alameda, as
opposed to 8828. The rent checks paid by Juhl to Malooly referenced property located at
“8836 Alameda.”
           The new laundromat opened in the shopping center in December 1998, severely
impacting Juhl’s business and eventually forcing it to close. Juhl filed suit for breach of
contract, and a jury found in his favor. The jury awarded lost profits in the amount of
$222,000 plus attorney’s fees. This appeal follows.
Issues One, Two, Three, and Four: Trust Can Be Sued
           In its first four issues presented, the Trust complains the trial court improperly
allowed suit to proceed because a trust, as a relationship rather than a legal entity, cannot
be sued and a judgment collectible against trust property cannot be rendered unless the
trustee is sued in his representative capacity. He relies on the Texas Property Code,
which provides:
If a trustee or a predecessor trustee makes a contract that is within his power
as trustee and a cause of action arises on the contract, the plaintiff may sue
the trustee in his representative capacity . . . . Tex. Prop. Code Ann. §
114.084(a) (Vernon 1995) (emphasis added).

           We note first that this language is permissive, not mandatory, and the statute does
not expressly prohibit suits against trusts. We cannot see how this statute, without more, 
prohibits suit against a trust.
           Moreover, Texas statutes clearly indicate that the legislature intended for a trust to
be treated as a legal entity. The Code Construction Act specifies that a “person” includes
a “corporation, organization, government or governmental subdivision or agency,
business trust, estate, trust, partnership, association, and any other legal entity.” Tex.
Gov’t Code Ann. § 311.005(2) (Vernon 1998) (emphasis added). Trusts are listed in
numerous Texas statutes as “person” subject to civil penalties. See, e.g., Tex. Prop.
Code Ann. § 301.003(12) (Vernon Supp. 2004); Tex. Ins. Code Ann. art. 1.10D, §
(1)(a)(4) (Vernon Supp. 2004); Tex. Health & Safety Code Ann. § 481.002(33)
(Vernon 2003 & Supp. 2004). We cannot reconcile these statutes with the Trust’s
assertion that the judgment against it is fundamentally defective because it is not a legal
entity.
           Further, a number of Texas cases indicate a trust may be named as a party without
inclusion of trustee. See, e.g., Castle Tex. Production Ltd. Partnership v. Long Trusts,
2003 WL 21771718, at *1 (Tex. App.--Tyler July 31, 2003, pet. denied); Reagan Nat.
Advertising v. Vanderhoof Family Trust, 82 S.W.3d 366, 368 (Tex. App.--Austin 2002,
no pet.); Bright & Co. v. Holbein Family Mineral Trust, 995 S.W.2d 742, 743 (Tex. App.--San Antonio 1999, pet. denied); B.F. Saul Real Estate Inv. Trust v. McGovern, 683
S.W.2d 531, 532 (Tex. App.--El Paso 1984, no writ). At least one court has stated that a
trust is a “separate legal entity.” Innovative Office Systems, Inc. v. Johnson, 906 S.W.2d
940, 952 (Tex. App.--Tyler), writ dism’d by agr., 911 S.W.2d 387 (Tex. 1995).
           Appellant does provide some authority for his argument that a trust is a legal
relationship that is not properly subject to suit. See Henson v. Estate of Crow, 734
S.W.2d 648, 649 (Tex. 1987); Dueitt v. Dueitt, 802 S.W.2d 859, 861 (Tex. App.--Houston
[1st Dist.] 1991, no writ). These cases, however, do not address the specific questions of
whether a trust may be held liable as a judgment debtor, nor do they reverse a judgment
entered against a trust. Moreover, neither Henson nor Dueitt involved an entity which
had entered into a contractual relationship with the plaintiff, as happened here. The Trust
also cites Coverdell v. Mid-South Farm Equip. Ass’n, 335 F.2d 9, 13-14 (6th Cir. 1964),
which does hold that under Tennessee law a trust cannot be sued. The Trust does not
argue that Tennessee law is comparable or even similar to Texas law, however. As this
case is governed by Texas law, Coverdell is not controlling, nor do we believe it would be
wise to adopt its reasoning in light of numerous Texas cases and statutory authority
indicating a trust may be sued. We overrule the Trust’s first, second, third, and fourth
issues.
Issues Five, Six, and Seven: Contract Issues
           In Issues Five, Six, and Seven, Appellant asks the Court to render judgment in the
Trust’s favor because the lease is not sufficiently certain to be enforceable, it violated the
statute of frauds, and because Appellees first breached the lease contract.
           Issue Five relies on the difference between the address number stated in the
contract and the one actually occupied and improved by the Juhls. Appellant contends the
Juhls were first to breach the contract by failing to occupy the address on the lease, 8828
Alameda, and therefore Appellant cannot be held liable for its own breach. Issue Seven
focuses on the lack of Malooly’s signature on the lease, thereby invoking the statute of
frauds, which requires a signed writing. These are both affirmative defenses on which
Appellant bore the burden of proof at trial, so we consider them together. See Tex. R.
Civ. P. 94.
           When an appellant attacks the sufficiency of the evidence on issues where it bore
the burden of proof, it must establish on appeal that the evidence conclusively proved all
vital facts in support of the issue. See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989); Smith v. Central Freight Lines, Inc., 774 S.W.2d 411, 412 (Tex. App.--Houston [14th Dist.] 1989, writ denied). In a “matter of law” review, we use a two-prong
test. See W. Wendell Hall, Revisiting Standards of Review in Civil Appeals, 24 St.
Mary’s L. J. 1045, 1135 (1993). We first examine the record for evidence that supports
the finding, while ignoring all evidence to the contrary. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001). If there is no evidence to support the finding, we then
examine the entire record to determine if the contrary proposition was established as a
matter of law. See Sterner, 767 S.W.2d at 690. Only if the contrary proposition is
conclusively established will we sustain the issue. Croucher v. Croucher, 660 S.W.2d 55,
58 (Tex. 1983).
           The statute of frauds requires a writing for a lease that cannot be performed in one
year or less, signed by the person against whom the contract is charged. Nevertheless, the
courts will not enforce the statute of frauds where non-enforcement of a contract would
itself plainly amount to a fraud. See Fort Worth Neuropsychiatric Hosp., Inc. v. Bee Jay
Corp., 587 S.W.2d 746, 748 (Tex. Civ. App.--Fort Worth 1979), rev’d on other grounds,
600 S.W.2d 763 (Tex. 1980). A valid contract need not be a single writing, but may
consist of various communications signed by parties connected with the transaction. See
Key v. Pierce, 8 S.W.3d 704, 708 (Tex. App.--Fort Worth 1999, pet. denied). When one
party partially performs under an agreement, an exception to the statute of frauds is
implied. See Newsom v. Newsom, 378 S.W.2d 842, 844-45 (Tex. 1964) (oral agreement
to lease property for more than one year enforceable where lessee accepted the benefit of
the possession of the land).
           Regarding Issue Five and whether the Trust conclusively proved the Juhls
breached first, we note that while the lease address differs from that actually occupied by
the laundromat, Appellant never complained that Appellee was occupying the wrong
premises. To the contrary, evidence included rent checks from the Juhls to Malooly
referencing the address “8836 Alameda.” Appellant continued to accept rent for the
property occupied by the Juhls, and never indicated that the Juhls wrongly occupied 8836,
or failed to occupy 8828. The laundromat was located in the same spot for nearly three
decades. A reasonable fact finder could find that both sides intended for the address on
the contract to reference the premises actually occupied by Appellees. In Appellant’s July
27, 1998 letter, it refers to an “expired lease option,” impliedly acknowledging that at
some point, a lease between the parties was in effect. Thus, the Trust did not
conclusively establish this affirmative defense. We overrule Issue Five.
           Next, we examine Issue Seven, and whether the Trust conclusively established a
statute of frauds defense. The Trust argues that the Juhls breached the contract because
they “never occupied any portion of 8828 Alameda, never repaired 8828 Alameda, never
remodeled 8828 Alameda and never paid rent on 8828 Alameda.” We cannot agree that
the statute of frauds precludes enforcement of the contract. In light of the obvious
intention of both parties to lease the laundromat premises in its long-established location,
we think there was simply never any real dispute between the parties about the space
which was subject of the lease. The Trust certainly did not conclusively establish that the
Juhls failed to occupy, rent, or remodel that space. Issue Seven is overruled.
           Issue Six contends the contract cannot be enforced because it was not sufficiently
certain as to the portion of 8828 Alameda leased. A contract is not enforceable unless the
court can determine the parties legal obligations from it. T.O. Stanley Boot Co., Inc. v.
Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992). The Trust contends that the contract
here lacks description of the property sufficient to allow a court to determine how much
of 8828 Alameda was leased. We find no such lack of specificity. The description in the
Juhl contract was certainly clear enough to allow performance on the contract for many
years, without complaint from either side. The eight-page contract contemplated the
basic issues that are the focus of this lawsuit, including successor landlords, non-compete
requirements, and renewal notices. There is nothing in the record to suggest either side
was confused, unsure, or unable to perform because a material term was omitted. We
find this contract was not too indefinite to permit enforcement. We overrule Appellant’s
sixth issue.
Issues Eight through Ten: Damages were Supported by Evidence
           The Trust’s eighth, ninth, and tenth issues concern Juhl’s recovery for lost profits. 
In its eighth issue, Appellant asserts jury charge error in the trial court’s failure to include
an instruction that Juhl’s lost profits were a natural, probable, and foreseeable
consequence of Defendant’s conduct. In its ninth issue, it asserts the Juhls did not plead,
prove and obtain findings that its damages were natural, probable, and foreseeable. As
these two issues raise the same complaint, we discuss them together.
           First, the Trust did not request an instruction on natural, probable, and foreseeable
consequence, nor did it object to any omission. Indeed, there was a lengthy exchange in
which the trial court stated that it was his understanding the Trust was not asking for
“probable and forseeable” to be included in the charge. We cannot discern from the
Trust’s response whether it agreed or disagreed with that statement. The court stated,
“You can’t have it both ways. You can’t say you do, [object] and you change your mind
and you want it.” The Trust made no response to that. The test for determining whether a
party preserves jury charge error is whether the party made the trial court aware of the
complaint, in a plain and timely way, and obtained a ruling. Tex. R. App. P. 33.1;
Castleberry v. Branscum, 721 S.W.2d 270, 276 (Tex. 1986). Here, there was no
discernible objection, and no ruling. Indeed, the Trust affirmatively stated it was not
objecting to that portion of the charge. We thus find that Appellant failed to preserve
error on his eighth and ninth issues and we overrule them.
            In his tenth issue, Appellant asserts the evidence is not legally sufficient to
support the jury’s finding on lost profits, claiming Appellees’ expert failed to use
objective facts, figures, or data. When the party not bearing the burden of proof on an
issue challenges the legal sufficiency of the evidence to support a finding, we consider all
the evidence in the light most favorable to the finding, and we disregard all evidence and
inferences to the contrary. Texas Dept. of Mental Health & Mental Retardation v.
Rodriguez, 63 S.W.3d 475, 480 (Tex. App.--San Antonio 2001, pet. denied). If there is
more than a scintilla of evidence to support the finding, the finding will be upheld. Id.
The trier of fact is the sole judge of the credibility of the witnesses and the weight to be
given to their testimony. Id.
           Texas courts require that lost profits be proven to a reasonable certainty. 
Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1098-99 (1938);
Texas Instruments v. Teletron Energy Management, Inc., 877 S.W.2d 276, 279 (Tex.
1994). The evidence of lost profits before this jury included the company’s history of
profitability and net profits for each of the five years from 1994 through 1998. In
addition, the jury saw spreadsheets of the laundromat’s monthly income and expenses
from 1994 to 2000. David Schauer, a professor of economics at the University of Texas
at El Paso, used the spreadsheets to calculate lost profits and testified as to his
conclusions. He used generally accepted accounting principles to reach a lost net profits
total of $220,124. The jury awarded lost profits in the amount of $222,000. The
professor testified that the amount was a reasonably certain measure of the laundromat’s
lost profits resulting from the opening of the competing laundromat in the same shopping
center.
           Appellant alleges the expert’s opinion was not based on objective facts or figures
because: (1) Plaintiffs’ expert assumed a 3 percent growth rate when Defendant’s
business was not growing; (2) Plaintiffs’ expert failed to take into consideration the
impact of a direct competitor in a different shopping center but in the same area as
Plaintiffs; (3) Plaintiffs failed to provide proof that they would have retained customers in
the future; (4) Plaintiffs’ expert failed to take into consideration the impact of federal
income taxes; and (5) Plaintiffs’ expert did not use objective data as it was provided by
Plaintiffs and contained various suspicious discrepancies including but not limited to
increased cost of water when sales volume decreased and the exact same cost month after
month for expenses that are not fixed cost items, such as supplies.
           The record does not support the Trust’s claim of legal insufficiency. Specifically,
we have found the following evidence which supports the jury verdict on damages: (1)
the economic expert testified that he based the 3 percent growth rate on an overall
national rate of growth pegged at 5 percent annually by the Bureau of Business and
Economic Research. He took the 5 percent rate, cut it in half, then applied it to the
dynamic growth of El Paso’s industries, and extrapolated a 3 percent projected growth
rate in revenues and expenses for the average El Paso business during the years in
question, consistent with generally accepted principles of economics and finance; (2) the
expert took into account the negative impact on the Juhls’ business resulting from another
laundromat within five miles of the Juhls, was a factor that reduced estimated annual
revenues from about $130,000 to $110,000; (3) while there is no way to prove future
profits with complete certainty, Texas courts have used a history of profitability in a
business as evidence of future profits. See Texas Instruments, 877 S.W.2d at 279. 
Appellees multiplied the average monthly net income in 1997 by the number of months
remaining on the lease after the breach, to total $345,213 in lost profits. The expert then
applied economic and finance forecasting principles to conclude there was a better than
50 percent chance that the Juhls would have earned a net profit of $220,124; (4) the
amounts projected as lost profits were computed before any adjustment for taxes. We
have held that there is no error in preventing inquiry of an expert into whether damage
calculations include income tax. Caterpillar Tractor Co. v. Gonzales, 599 S.W.2d 633,
638 (Tex. Civ. App.--El Paso 1980, writ ref’d n.r.e.) (“We find no error since the
economist gave his answer that his figure did not exclude the federal tax.”). Appellees
point out that since most categories of damage awards are taxable, reducing a damage
award by taxes that would have been paid would result in double-taxation; (5) Appellant
was able to cross-examine Appellees’ expert on the “various suspicious discrepancies”
alleged in Issue Ten. The data may well have been “self-serving” because it was
provided by the Appellees. However, this is a challenge to the credibility of the evidence,
which is the exclusive province of the trier of fact. Reynolds v. Kessler, 669 S.W.2d 801,
807 (Tex. App.--El Paso 1984, no writ).
           Thus, our review of the record in relation to Appellant’s complaints in Issue Ten
reveals more than a scintilla of evidence to support the jury’s award of lost profits. We
overrule the Trust’s tenth issue.
Conclusion
           Having overruled each of Appellant’s issues, we affirm.
 
                                                                  SUSAN LARSEN, Justice
June 17, 2004

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.